Frank J. Kronenberg, J.
The Motor Vehicle Commissioner has been directed herein to show cause why an order should not be made annulling the decision of his department revoking petitioner’s driver’s license for “ refusing to take the intoximeter test ’ ’ as prescribed by law.
Can we have a ‘1 refusal ’ ’ where the driver initially declined to take the test, however, within the two-hour period, consented to take the test, and the facilities* to conduct the. same were still available? The Referee in his findings concludes by stating: “ The Referee finds that there was a refusal to submit to a chemical test, although Mr. O’Dea changing his mind with sufficient time remaining for a blood sample to be taken, because the Referee is convinced that the officer had every reason to believe that Mr. O’Dea was not sincere in his again changing Ms mind.”
*959 Are we to believe that these matters should be determined on whether or not the arresting officer questions the sincerity of the driver when he says he will take the test?
Would not it be reasonable to expect that the officer, rather than speculate as to whether the driver will actually take the test or not, actually proceed to give the test? This certainly would give him an absolute answer.
This court does not condone driving while intoxicated, at the same time we are all aware of the vital need of a driver’s license and we should not deprive anyone of the same without a clear, factual determination that the driver was accorded all the rights to which he was entitled under the the law and that none of said rights were denied the driver for some “ extralegal ” reason such as the one stated in the Referee’s report; viz.: “ that Mr. O’Dea at that point told Trooper Wisniewski that he would submit to a chemical test and give a blood sample; that Trooper Wisniewski at that point stated that it was too late inasmuch as he had run out of patience.”
The court was under the assumption that the law prescribed a “ time Emit”, not a “patience Emit". Time may run out; patience should not.
This court questions however that a defendant may deliberately delay the taking of a test for one hour and 59 minutes.
It must be noted for example that in Matter of Sweeney v. Tofany (30 A D 2d 934) (cited by petitioner) that the court indicated that the defendant had not made an “ understanding ” refusal.
The court stated in Matter of Sweeney v. Tofany (supra) as follows: “We find that petitioner did not make an understanding refusal to take the test. The request made of him by the officer misled petitioner to believe that the test was optional, and that no penalty would result from refusal to take it. As soon as he learned that this was not the case, he agreed to submit to the test. It is apparent that he acted in good faith; and his unqualified offer was made within one hour after the accident and less than an hour after his arrest so that no prejudice resulted. His original refusal to take the test was not made to gain time; and more than an hour remained in which a proper test could have been given within the statutory time, (Vehicle and Traffic Law, § 1192, subd. 3). This case is therefore, clearly distinguishable from Matter of Lundin v. Hults (29 A D 2d 581); Matter of Neet v. Hults (26 A D 2d 970); *960 Matter of McKenna v. Hults (25 A D 2d 951) and Matter of Pettengill v. Hults (21 A D 2d 853).”
In what category does the case at bar fall?
In Matter of Lundin v. Hults (supra) the defendant returned to the police substation a few minutes before the expiration of the two-hour period following his arrest. There was no police officer present qualified to give the test and it would take 20 to 25 minutes to warm up the equipment. Under these and the other circumstances of the case the court found that there had been a refusal.
In Matter of Jentzen v. Tofany (33‘ A D 2d 532) the court held that the petitioner did not make 1‘ an understanding refusal ” to take the test when he was asked “ ‘ Will you submit to a chemical test for intoxication? ’ ” replied “ ‘ I cannot be involved in anything ’ ”, He was not informed that “ refusal ” was grounds for revocation of his license and when his attorney arrived and advised him to take the test, he consented to do so, but the officer declined to give it, alleging a prior refusal. There were facilities to administer the test available and still plenty of time (1 hour) in which to meet the time limit. Under the circumstances the court held that there was no refusal.
“Was there an ‘ understanding refusal ’ here initially? ”
The Referee in his findings stated: ‘1 The Referee having had an opportunity to observe both the officer and Mr. O’Dea as they testified and after careful consideration of all of the evidence of record, finds that the officer’s testimony was more truthful and accurate of what actually occurred on May 2,1969.”
Trooper Wisniewski testified on cross-examination as follows: By Mr. Hackett: (To Trooper Wisniewski)
“ Q. But, is it true that you returned to the barracks with Mr. O’Dea? A. Yes.
“ Q. Was there a Trooper O’Brien at the barracks when you got back? A. There was.
‘ ‘ Q. Did he make some statement to Mr. O ’Dea he should have taken the test because now he would probably lose his license or something about revocation of license? A. Trooper O’Brien was there. He might have made that statement, I don’t recall.
‘ ‘ Q. Did you hear Mr. O ’Dea then say if that was the case he would take the test? A. He did make a statement of such.
“ Q. At that time you refused to give him the test? A. I stated that it was too late now.
“ Q. It still was in the two-hour time period? A. Right, yes.
“ Q. The hospital was just situated on the corner a thousand *961 yards or so away from the barracks, is that correct! A. Yes.” By the Referee: (To Trooper Wisniewski)
“ Q. What made it too late! A. There was the period involved, the circumstances involving the arrest. He was advised.
“ Q. As far as you were concerned it was too late! A. Numerous occasions.
“ Q. In other words, it wasn’t just the time element! A. It wasn’t the time element. I figured I had extended myself.”
It is quite apparent that there was considerable tension throughout this entire incident as is witnessed by the trooper’s testimony that he handcuffed the defendant and placed him in the trooper car and took him to the station and that when he took defendant to Mt. St. Mary’s Hospital the defendant refused to sign a waiver and stated “ I won’t, no one is going to take any blood. ’ ’
The trooper further contends that the defendant was fully advised of the consequences of his failure to take the test prior to going to the hospital.
However, the testimony is not clear as to whether or not the admonishment of the trooper complied with section 1194 of the Vehicle and Traffic Law and Matter of Ferreri v. Tofany, (60 Misc 2d 534).
The defendant testified on questioning by the Referee as follows:
“ Q. Now, is this all true that he warned you about the possible consequences of the refusal and you actually said, no, on several occasions! A. The first time that I heard of the possible consequences was when I came back from the hospital and Trooper O’Brien happened to remark that it was too bad.
“ Q. And that you would probably lose your license. This Trooper Wisniewski never told you that! A. He never explained in detail the consequences of not taking it.”
It is interesting to note that Trooper Wisniewski admitted that it was after Trooper O’Brien informed the defendant of the consequences of a refusal that the defendant then agreed to take the test, and that there was still ample time and the facilities were available.
The court feels that this was the first time that the defendant could 1 ‘ knowingly refuse ’ ’ and that he did not do so.
Consequently, in answer to the question first posed herein, the court finds that there can be a refusal before the time limit expires and that the defendant may be precluded from taking the test thereafter. However, the refusal must be ‘ ‘ know *962 ingly”, and the defendant cannot “knowingly refuse ” unless he has been fully advised of his rights as prescribed by law and the cases, and he must comprehend the meaning of the same and the resulting consequences.
The court finds herein that petitioner did not ‘ ‘ knowingly ’ ’ refuse and that the test should have been administered after the admonition of Trooper O’Brien and the consent of the petitioner.
Consequently, the action of the Commissioner herein, must be and hereby is annulled and the Motor Vehicle Department is hereby directed to return petitioner’s operator’s license.